E. W. G. BURBANK, Curator, v. PAYNE & HARRISON.—JAMES L. ARBUTH-
NOT, Appellant.

When a person dies, leaving property in two or more States or countries, his property in each State is considered as a separate succession, for the purposes of administration, the payment of debts and the decision of the claims of parties asserting title thereto.

It is the deliberate opinion of this court that the powers of administrators, appointed in different States, extend only to the limits of the sovereigns creating them, and that neither allows the other to intermeddle with any assets within their respective jurisdictions.

Fiduciary agents cannot transfer negotiable assets without an order of court.

APPEAL from the Second District Court of New Orleans. *Morgan*, J. *Whitaker, Fellows & Mills* for plaintiff. *Benjamin, Bradford & Finney* for defendants. *Carleton Hunt* and *J. H. Kennard* for Arbuthnot.

ILSLEY, J. The plaintiff in this case, acting as the curator of the vacant succession of Robert Woodsides, who died in the parish of Assumption, in this State, where his succession was duly opened, instituted suit in the Second District Court of New Orleans against Payne & Harrison, claiming from them certain funds in their hands belonging to the succession of Woodsides.

The defendants, by their answer, admitted that they had in their hands, standing to the credit of the deceased Robert Woodsides, the sum of $521 17, and that they also hold a further sum of $5,000, which, they say, was deposited with them some time about the 13th March, 1860, by one Seth Kline, and for which they issued a certificate, payable to the said Robert Woodsides, or to his order. They further represent that they believe that the said certificate is held by one J. L. Arbuthnot, who resides in Mississippi, at Woodville, who has specially notified them not to pay the said deposit nor balance of account to any one but him, in his capacity of administrator of the said Robert Woodsides, duly appointed by the proper court, in the State of Mississippi, where the deceased was domiciliated. They express their willingness to pay the several sums claimed of them, upon return of the certificate of deposit issued by them, and they pray for the appointment of a curator *ad hoc* to represent the said J. L. Arbuthnot in the suit pending.

The curator *ad hoc* answered, claiming the whole amount in controversy, as administrator of the estate of of Robert Woodsides, under appointment of the Probate Court of Wilkinson county, Mississippi, in which capacity the certificate of deposit was received by him, and which certificate is in the following words :

"Received of Seth Kline five thousand dollars, subject to the order of Robert Woodsides, to be at his credit on account.

[Signed]                              PAYNE & HARRISON,
                                      J. L. ARBUTHNOT, Administrator.

New Orleans, March 30th, 1860."

On the trial of the case in the court below, both the plaintiff and J. L. Arbuthnot produced their respective letters of administration, and the defendants, Payne & Harrison, being mere stakeholders, the contest is exclusively between the Louisiana curator and the Mississippi adminis-

trator. It is conceded, for the purpose of arriving at the real issue in this case, that Robert Woodsides, at the time of his demise in Louisiana, had his domicil in Wilkinson county, in Mississippi, and that his estate there, and his succession here, were properly and legally opened in both States.

That the Louisiana succession was properly opened, does not admit of a doubt. It was a case specially provided for in the Act of the Legislature passed on the 16th March, 1842, section 1.

And as regards the independent action of succession so opened, the opinion of the court in *Atkinson* v. *Rogers*, is directly in point. It is there held : "The plea to the jurisdiction of the courts of this State, on the ground that the succession of T. W. Griffen had been opened in Amite county, in the State of Mississippi, is not good in law. When a person dies, leaving property in two or more States or countries, his property in such State is considered as a separate succession, for the purposes of administration, the payment of debts and the decision of the claims of parties asserting title thereto."

It is the deliberate opinion of this court that the powers of administrators, appointed in different States, extend only to the limits of the sovereigns creating them, and that neither allows the other to intermeddle with any assets within their respective jurisdictions. And had any exception been taken to the right of the Mississippi administrator to stand in judgment in the case, we should, without hesitation, have maintained it, but as it is, we shall proceed to the examination of the issue presented :

The broad question presented now for solution is, whether the fund held by Payne & Harrison is assets in the Louisiana succession, or in the Mississippi estate. It is urged by the curator that the money, being on deposit in the State of Louisiana, at Woodsides' demise, it is, to all intents and purposes, an asset of the succession under his administration; whilst, on the other hand, the administrator contends that the certificate of deposit, as he terms it, being in a negotiable form, and in his possession, belongs to the Mississippi estate. Were this instrument in the hands of a *bona fide* endorsee from the administrator, claiming the amount of this fund, the question then might arise, whether it was transferable by endorsement, and whether the endorsement could be legally made by the administrator—whether a payment of it made to an assignee would be a valid one ? But, as it is the administrator himself who is prosecuting the claim, is it not competent for the court to ascertain the nature of the title he sets up, and how and when he acquired it ? Woodsides died on the 14th March, 1860, one day after the money was deposited with Payne & Harrison, by Kline ; so that, at his death, that sum, with the balance previously to his credit on the books of that house, formed a part of his succession in Louisiana. It is not shown when the evidence of the deposit by Kline was taken out of the State, and it is therefore reasonable to presume it was in this State when the succession was opened here. It was in the hands of Kline a receipt to him, showing that he had paid that sum for Woodsides, and that it was subject to Woodsides' order. He might have retained this receipt for his own protection, without compromitting himself with Woodsides, who would not, for that cause, have

been precluded from claiming any amount due to him on general account by Payne & Harrison, and his paid drafts on, or receipts to them, would have discharged them from liability.   There was no condition on the face of the receipt, which made the payment of the fund dependent on its production, which is usual in certificates of deposit made to order.   If Kline was willing to give up the receipt, he should have done so to some person who was authorized to receive it; and, certainly, the only proper person to receive it was the curator here; and the mere adventitious circumstance of its having found its way into the hands of the administrator, does not, we conceive, vest in the estate in Mississippi the fund in Louisiana, payment of which might have been exacted, with or without the production of the receipt.

It is strenuously contended that it was competent for the administrator, under the law of Mississippi, to negotiate this instrument, and that it was, therefore, practically and legally, an asset of the Mississippi estate.

We see nothing in the law of Mississippi, which is spread on the record, to show that fiduciary agents can assign moneyed instruments.

Reference is made on this point to the rulings of the courts of New Hampshire and Massachusetts; but, in the absence of any *lex loci contractus*, we shall give effect in preference to the ruling of our own courts on that subject.   See *Nicholson* v. *Chapman*, 1 An. 22.   It is here held that fiduciary agents cannot transfer negotiable assets without an order of court; and there is no certainty that any such an order would ever be granted.   If the amount of the receipt could be paid to the administrator at all, it would not be solely on account of its being a negotiable instrument, but because he could give a *valid* discharge for payment of it made to him, which we do not think he could.

It is therefore ordered, adjudged and decreed, that the judgment of the Court below be affirmed, costs of appeal to be paid by appellant.